**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 11-cv-02398-CMA-KLM

VICTOR RACZ,

      Plaintiff,

v.

SBLI USA MUTUAL LIFE INSURANCE COMPANY, INC.,

      Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

This matter is before the Court on the Motion for Summary Judgment (Doc. #19) filed by Defendant SBLI USA Mutual Life Insurance Company, Inc.  Jurisdiction is proper based on 28 U.S.C. § 1332 (diversity jurisdiction).  For the reasons discussed below, Defendant's motion is granted.

## I. BACKGROUND

Plaintiff Victor Racz is the surviving spouse of Sheila B. Racz ("Ms. Racz"). (Doc. # 24 at 4.)  Since 1991, Ms. Racz had been insured under a life insurance policy issued by Defendant.  (*Id.*)  Plaintiff was the designated beneficiary under this policy. (*Id.* at 5.)  As relevant here, the policy provided:

> **Section 4. DATE YOUR INSURANCE ENDS.**  Insurance ends on the earliest of:
>     A.  the 31st day following the date your premium is due and unpaid . . . .

[. . .]

**Section 14.  PREMIUM PAYMENT.**  Each premium is payable to us or our authorized agency by its due date.  Payment of any premium will not keep your insurance in effect beyond your Grace Period . . . .

[. . .]

**Section 15.  GRACE PERIOD.**  After the first premium, if your premium is not paid by its due date, payment may be made within 31 days of such date.

[. . .]

**SECTION 17.  REINSTATEMENT.**  You may reinstate your insurance within 5 years after your insurance ends for non-payment of premiums by:
 B.  submitting an application on our form with evidence of insurability satisfactory to us; and
 C.  by paying all overdue premiums with 6% interest per annum.

(Doc. # 19-10.)

  Ms. Racz's semi-annual policy premium was due on January 9, 2010, and her "Premium Notice & Policy Statement" authorized payment by mail.  (Doc. # 19-2.)  The notice also stated that "[u]nless the Premium Due shown by this notice is paid to us, on or before the due date or within the 31 day grace period thereafter, the policy or certificate will lapse . . . .   Acceptance of the premium after lapse does not constitute reinstatement."  (*Id.*)  Plaintiff alleges that in January 2010, Ms. Racz mailed to Defendant an instruction to change her method of payment to automatic payment by debit card, using a form and an envelope provided by Defendant.  (Doc. # 2, ¶ 7.)  Defendant denies this allegation.  (Doc. # 24 at 4.)  Regardless, Defendant sent Ms. Racz a "Lapse Notice & Late Payment Offer" in February 2010.  (Doc. # 4, ¶ 8, Doc. # 19-1.)  This notice included the policy's premium amount and due date, and indicated that "[t]he premium being unpaid, the policy or certificate has terminated . . . ."

(Doc. # 19-1.)  It also contained a special offer to accept a late payment for an additional 15 days following the expiration of the grace period provision contained in Ms. Racz's policy.  (*Id.*)

Although Plaintiff does not admit that Ms. Racz received this particular notice, Ms. Racz testified in her sworn deposition that she received "what I had called [a] crossed-in-the-mail-type statement.  You know, your payment was due.  We didn't receive it.  Which I knew I had mailed it, so I kind of ignored that one."  (Doc. # 19-3.) Ms. Racz did not call Defendant to inquire about her automatic payment request.  (*See id.*)  Defendant withdrew no money from Plaintiff's and Ms. Racz's bank account in January or February 2010 (Doc. # 19-4), and both Plaintiff and Defendant agree that the policy lapsed in 2010 (Doc. # 24 at 4).

In April 2010, Ms. Racz received a reinstatement application and a notice from Defendant that her insurance had lapsed for non-payment of premiums.  (Doc. # 2, ¶ 8; Doc. # 4, ¶ 8.)  Defendant received Ms. Racz's reinstatement application and the overdue premium in May 2010.  (Doc. # 4, ¶ 8.)  Defendant alleges that Ms. Racz did not comply with the underwriting requirements for reinstatement because she did not undergo a requested medical examination.  (*Id.*)  In July 2010, Ms. Racz's attorney informed Defendant that Ms. Racz had been diagnosed with cancer.  (*Id.*)  Defendant asserts that because Ms. Racz had not undergone a medical examination, it therefore cancelled her reinstatement application and returned her premium.  (*Id.*)  Ms. Racz never negotiated Defendant's refund check.  (Doc. # 2, ¶ 10, Doc. # 4, ¶ 10.)  She died on July 29, 2010.  (Doc. # 24.)

Plaintiff initiated this action in Colorado state court, claiming negligence, bad faith, and breach of contract.  (Doc. # 2.)  Defendant removed the action to this Court.  (Doc. # 1.)  On May 7, 2012, Defendant filed the instant motion for summary judgment.  (Doc. # 19.)  Plaintiff responded on May 28, 2012 (Doc. # 20), and on June 11, 2012, Defendant replied (Doc. # 21).

## II. DISCUSSION

### A.     STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be rendered if the pleadings, discovery, disclosure materials on file, and any affidavits "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  *Id.* at 252.

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir.1998) (citing *Celotex,* 477 U.S. at 323).  After the movant has met his initial burden, the burden shifts

to the non-movant to put forth sufficient evidence for each essential element of the claim such that a reasonable jury could find in his favor. *See Anderson*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The non-movant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to the non-movant. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). "At the summary judgment stage, evidence need not be submitted 'in a form that would be admissible at trial.'" *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (quoting *Celotex*, 477 U.S. at 324). "Nonetheless, 'the content or substance of the evidence must be admissible.'" *Id.* (quoting *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995)).

**B.   ANALYSIS**

Because the Court has diversity jurisdiction over this case, the Court applies Colorado law and interprets the insurance policy at issue as a Colorado court would. *Leprino Foods Co. v. Factory Mut. Ins. Co.*, 453 F.3d 1281, 1287 (10th Cir. 2006). Interpretation of an insurance contract is a matter of law. *Id.*

**1.   Negligence Claim**

In opposition to Plaintiff's claim that Defendant was negligent in failing to implement Ms. Racz's automatic premium payments, Defendant argues that summary judgment is proper because the language of the policy required that Defendant actually receive payment to prevent a lapse. The Court agrees with Defendant.

"In well-settled tort jurisprudence, a claimant alleging negligence of another party must establish the existence of a duty, a breach of that duty, causation, and damages." *Redden v. SCI Colo. Funeral Servs., Inc.*, 38 P.3d 75, 80 (Colo. 2001).  In the insurance context, "[a]bsent an express agreement or a course of dealing to the contrary, the mailing of a premium or a statement alone is not *per se* sufficient to constitute delivery thereof." *Butkovich v. Indus. Comm'n*, 690 P.2d 257, 259 (Colo. App. 1984).  *See also Thomason v. Schnorr*, 587 P.2d 1205, 1206 (Colo. App. 1978) (risk of postal loss was on insured where no facts indicated that insurer intended the mere mailing of a premium to be sufficient as payment).  But if the party in control of the transaction directs or permits payment by mail, then it bears the risk of loss and the "deposit payment rule" dictates that the time of delivery is the time that payment, properly addressed, is put in the mail.  *Werne v. Brown*, 955 P.2d 1053, 1055 (Colo. App. 1998).  Nevertheless, an insurer can avoid the consequences of the deposit payment rule by specifying clearly that payment is effective only when actually received.  *Id.  See also Butkovich*, 690 P.2d at 258 (mailing within renewal period not sufficient to avoid cancellation where policy stated that premium had to be "received at this office" by the due date).  Further, "[p]ayment by check is conditional only and does not discharge the liability for which payment is given, unless there is an express or implied agreement that the check be accepted as absolute payment." *Bolz v. Sec. Mut. Life Ins. Co.*, 721 P.2d 1216, 1218 (Colo. App. 1986).

As a preliminary matter, the Court notes that the parties dispute whether Defendant received Ms. Racz's automatic payment instruction.  Plaintiff asserts that

Ms. Racz mailed the instruction to Defendant (*see* Doc. # 2), but Defendant contends that it has no record of ever receiving the instruction (*see* Doc. # 19 at 1).  The Court finds that, given the weight of the evidence favoring Defendant's position, there is no genuine dispute over this fact.  *See Anderson*, 477 U.S. at 252.  Defendant's evidence includes the "Lapse Notice & Late Payment Offer" addressed to Ms. Racz (Doc. # 19-1), Ms. Racz's admission that she received a statement informing her that Defendant had not received her payment (Doc. #19-3), the policy's lapse (Doc. # 24 at 4), and Ms. Racz's attempt to reinstate the policy (*id.* at 5).  Accordingly, the Court finds that a jury could not reasonably conclude that Defendant received Ms. Racz's automatic payment instruction, and thus whether Defendant received this instruction does not present a genuine dispute of material fact that would preclude summary judgment in Defendant's favor.

Next, the Court finds that even if Defendant had received Ms. Racz's automatic payment instruction, that alone would not constitute payment under Colorado law. Although Defendant authorized payment by mail, neither its Premium Notice & Policy Statement (Doc. # 19-2), nor its Lapse Notice & Late Payment Offer (Doc. # 19-1), conveyed that checks or automatic draft instructions would be accepted as absolute payments.  In fact, the Premium Notice & Policy Statement warned that "checks and drafts [are] accepted subject to collection" and indicated that the policy would lapse unless the premium was "paid" on or before the due date, or within a subsequent grace period.  (Doc. # 19-2 at 1–2.)  The Lapse Notice & Late Payment offer also stated that "checks and drafts [are] accepted subject to collection," and clearly stated that "any

check, credit card or electronic funds transfer will not constitute payment if it should be dishonored."  (Doc. # 19-1 at 1–2.)  Therefore, even if Defendant had received Ms. Racz's automatic payment instruction, Defendant's policy statements did not contain an express agreement that submission of a conditional form of payment for a policy premium would constitute payment thereof.  Instead, such statements made clear that the policy was contingent on Defendant's actual receipt of funds, not merely the receipt of a check, credit card form, electronic funds transfer, or any other conditional method of payment.  Moreover, Defendant collected no funds at the time the payment was due or within the subsequent grace period, and Ms. Racz did nothing to ensure that Defendant actually received her funds within the designated time.  She admittedly ignored Defendant's notice that it had not received her payment and never inquired about the status of her automatic payment instruction.

Accordingly, Ms. Racz did not, as the policy required, pay her premium before the grace period ended, and so the policy lapsed due to nonpayment.   As such, the Court concludes that summary judgment for Defendant is proper on Plaintiff's negligence claim.

### 2.      Bad Faith & Breach of Contract Claims

Plaintiff next contends that Defendant breached its contract with Ms. Racz in bad faith by unreasonably accepting her premium payment without providing benefits and by "refusing to investigate or acknowledge its error which caused the policy to lapse." (Doc. # 2 at 2.)  Defendant argues that an expert witness is required to support Plaintiff's bad faith claim and that, because Plaintiff has not endorsed an expert on

insurance or insurance claims handling, Plaintiff's bad faith claim must be dismissed. (*Id.*)  The Court disagrees with Defendant, but nonetheless determines that it is entitled to prevail on Plaintiff's bad faith claim and breach of contract claim.

"A bad faith insurance claim in Colorado 'is the affirmative act of the insurer in unreasonably refusing to pay a claim and failing to act in good faith . . . that forms the basis for liability in tort.'"  *Parsons ex rel. Parsons v. Allstate Ins. Co.*, 165 P.3d 809, 817 (Colo. App. 2006) (quoting *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138, 1142 (Colo. 1984)).  "The reasonableness of the insurer's conduct must be determined objectively, based on proof of industry standards."  *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 415 (Colo. 2004).  Although "the aid of expert witnesses is often required in order to establish objective evidence of industry standards," *id.*, expert testimony is unnecessary where the defendant's standard of care does not require specialized or technical knowledge, *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 343 (Colo. 2004).

Whether the standard of care exceeds common knowledge is "committed to the sound discretion of the trial court."  *Allen*, 102 P.3d 333 at 344.  In *Allen*, the Colorado Supreme Court addressed whether expert testimony was needed to establish a reasonable investigation or denial of an insured's claim.  *Id.*  It concluded that "the reasonableness of an insurer's investigation into the underlying events of an . . . insurance claim is not a technical question and does not require additional professional training beyond the knowledge of the average juror.  Nor does a determination of what constitutes a reasonable explanation for denying a claim require special knowledge or training."  *Id.* at 345.  The Court agrees with the reasoning of the *Allen* court and

concludes that no special knowledge or training is needed to determine the reason-ableness of Defendant's alleged failure to process Ms. Racz's automatic payment form or its alleged failure to pay death benefits upon "accepting the final premium," as Plaintiff argues. Nor is special training or knowledge needed to determine the reasonableness of Defendant's decision to deny benefits after Ms. Racz's policy lapsed due to non-payment, as Defendant argues. Accordingly, the Court concludes (1) that expert testimony is not required to establish Defendant's standard of care and (2) that Plaintiff's bad faith claim need not be dismissed merely because Plaintiff has failed to endorse an expert witness on insurance or claims handling. Nevertheless, as previously mentioned, the Court concludes that Defendant is still entitled to summary judgment on Plaintiff's bad faith and breach of contract claims.

An insurance application is the insurer's proposal or invitation for an offer, and a completed application is an offer by the applicant to the insurer, which the insurer may accept or reject after determining whether the applicant represents a desirable risk. *Griffin v. State Farm Fire & Cas. Co.*,104 P.3d 283, 285–86 (Colo. App. 2004). Where "the insurer acts prudently pursuant to the reinstatement terms and conditions so as to provide the insured adequate and reasonable opportunity to perform the conditions imposed for reinstatement, the general rule is that such performance is a condition precedent to reinstatement of the lapsed policy." *Volis v. Puritan Life Ins. Co.*, 548 F.2d 895, 902 (10th Cir. 1977). "Under such circumstances the payment of the delinquent premium alone . . . would not effect reinstatement of the policy." *Id.* Moreover, "in the absence of an insurance policy issued to [the plaintiff] . . . claims for a breach of

contract and bad faith must fail as a matter of law." *Myers v. Mid-W. Nat'l Life Ins. Co.*, No. 04-cv-00396, 2008 WL 4002856, at *7 (D. Colo. Aug. 25, 2008) (unpublished).

In the instant case, Defendant argues that Ms. Racz's policy was never reinstated because she failed to complete the underwriting process.  (Doc. # 19 at 12.) Ms. Racz applied for reinstatement of her life insurance policy in April 2010, sending in the application along with a check for the overdue premium.  (Doc. # 2, ¶ 8; Doc. # 4, ¶ 8; Doc. # 19-5.)  The application indicated that insurance reinstatement might be declined if she "present[ed] a greater risk due to adverse medical findings or history," and that "[a]ny reinstatement [was] subject to the approval of [Defendant's] under-writers." (Doc. # 19-5.)  Defendant, through its underwriter Miguel Pedraza, sent Ms. Racz a letter in June 2010 that confirmed the receipt of her application for reinstatement, and informed her that "[t]o fairly evaluate your application, it may be necessary to contact you directly or review your medical history by obtaining medical requirements.  If medical requirements are necessary, a representative of our paramedical company, *ExamOne*, will contact you to make an appointment at your convenience." (Doc. # 19-7.)  A record of ExamOne's phone calls to Ms. Racz in June and July 2010 indicate that a medical exam was never scheduled.  (Doc. # 19-8.) In July 2010, Ms. Racz's lawyer sent a letter to Mr. Pedraza, stating that Ms. Racz "will probably not pass new medical underwriting" and that she had been diagnosed with cancer.  (Doc. # 20-2.)  Defendant then ceased processing Ms. Racz's reinstate-ment application and refunded her premium.  (Doc. # 2, ¶ 10.)

Plaintiff objects to the letter sent by Mr. Pedraza, and to the record of phone calls made to Ms. Racz by ExamOne, as hearsay.  The Court finds that both the letter and the log fall under the business records exception in F.R.E. 803(6) (records of a regularly conducted activity are excluded by the rule against hearsay if the record was made at or near the time by someone with knowledge, the record was kept in the course of a regularly conducted activity of a business or organization, making the record was a regular practice of that activity, and there is no indication of a lack of trustworthiness). Accordingly, the Court relies on both documents.

Moreover, there is no evidence that the policy was reinstated.  As such, the Court concludes that Ms. Racz's reinstatement application never completed underwriting and that, therefore, the policy was never reinstated.  Defendant's temporary holding of the premium was not sufficient to reinstate Ms. Racz's insurance absent the completion of underwriting. *See Griffin*, 104 P.3d at 285–86.  Because there was no policy in place at the time of Ms. Racz's death, Plaintiff's bad faith and breach of contract claims fail as a matter of law.

### III. <u>CONCLUSION</u>

For the foregoing reasons, it is ORDERED that Defendant's Motion for Summary Judgment (Doc. # 19) is GRANTED.  It is

FURTHER ORDERED that, while each party shall bear its own attorneys' fees, Defendant shall have its costs by the filing of a Bill of Costs with the Clerk of the Court within ten days of the entry of judgment.  It is

FURTHER ORDERED that the Final Trial Preparation Conference, set for February 1, 2013, and the three-day Jury Trial, scheduled to begin on February 19, 2013, are VACATED, and this case is DISMISSED.

DATED:  November __29__, 2012

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge